*FILED*

*97 MAR 21 PM 12: 43*

*N.D. OF ALABAMA*
*N.D. DISTRICT COURT*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DARIN ANTHONY JONES,                )
                                    )
            Petitioner,             )
                                    )
vs.                                 )    Case No. CV 95-N-2106-M
                                    )
RON SUTTON, Warden;                 )
ATTORNEY GENERAL OF                 )
THE STATE OF ALABAMA,               )
                                    )
            Respondents.            )

**ENTERED**

MAR 2 1 1997

MEMORANDUM OF OPINION

This is an action by an Alabama state prisoner pursuant
to 28 U.S.C. § 2254, challenging the constitutional validity of the
murder conviction he received in the Etowah County Circuit Court on
August 10, 1990.  The petitioner, Darin Anthony Jones, filed his
pro se petition for writ of habeas corpus on August 16, 1995, while
he was incarcerated at the St. Clair Correctional Facility in
Springville, Alabama.  Although initially this matter was referred
to a magistrate judge for a preliminary review and recommendation,
that reference is hereby withdrawn.

Procedural History

On August 10, 1990, the petitioner was convicted of
murder in the Circuit Court of Etowah County, and he was sentenced

*10*

on August 30, 1990, to life imprisonment in the state penitentiary.
He appealed to the Alabama Court of Criminal Appeals alleging that
his constitutional rights were violated because the trial court
erred by admitting into evidence State's exhibit number 38, a gun
allegedly used by the petitioner, where the chain of custody was
not properly established.   The Alabama Court of Criminal Appeals
affirmed the trial court on May 31, 1991, stating:

> Affirmed by Memorandum.   The judgment of the
> circuit court is affirmed.   The issue of
> whether the trial court erred in accepting
> into evidence state's exhibit 38, a shotgun,
> is without merit, because the chain of custody
> began when the shotgun was seized. See <u>Wil-
> liams v. State</u>, 505 So. 2d 1252 (Ala. Cr. App.
> 1986), aff'd, 505 So. 2d 1254 (Ala. 1987).   No
> procedural bars apply.

The petition for writ of certiorari was granted initially by the
Alabama Supreme Court but then subsequently denied on December 20,
1991, that court stating:

> ...   During the trial, Ransaw identified
> State's exhibit number one as Samuels's gun
> and identified State's exhibit number 38 as
> the gun used by Jones.   Faye Gary, a lieuten-
> ant with the Gadsden Police Department, testi-
> fied that she received a telephone call on
> February 26, 1990, at her home, from a confi-
> dential informant and at the meeting was given
> State's exhibit number 38.   She testified that
> she took the gun home with her and kept it
> until 8:00 a.m. the next morning, when she

2

carried it to city hall and gave it to Lieutenant Jeffrey E. Wright.

Lieutenant Gary testified that her informant told her that he was given this gun by an unidentified person and that this unidentified person told Gary that he had bought it for $5 from a small child who had seen it being put in a ditch behind the Carver Community Center. Gary also testified that when she turned the gun over to Lieutenant Wright, it was in the same, or substantially the same, condition as it was in when she received it from the informant.

Jones does not dispute the chain of custody of the gun after it was placed into officer Gary's custody. Jones contends only that there was insufficient testimony as to the whereabouts of the gun between the time of the offense and its initial delivery to Lieutenant Gary; therefore, he argues, there was a break in the chain of custody and the gun should have been excluded from evidence. The trial court admitted into evidence exhibit number 38 over Jones's chain-of-custody objection. Jones was found guilty of murder and was sentenced to life imprisonment. The Court of Criminal Appeals affirmed stating in an unpublished memorandum opinion, 586 so. 2d 304, that Jones's chain-of-custody argument was "without merit, because the chain of custody began when the shotgun was seized." We agree. "'To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain.'"

Laws v. State, 562 So. 2d 305, 306 (Ala. Cr. App. 1990).

" 'The purpose for requiring that the chain of
custody be shown is to establish to a reason-
able probability that there has been no tam-
pering with the evidence. <u>Williams v. State</u>,
375 So. 2d 1257 (Ala. Cr. App.), cert. denied,
375 So. 2d 1271 (Ala. 1979); <u>Tate v. Smith</u>,
435 So. 2d 190 (Ala. Cr. App. 1983); <u>Smith v.
State</u>, 446 So. 2d 68 (Ala. Cr. App. 1984).
"The evidence need not negate the most remote
possibility of substitution, alteration, or
tampering with the evidence, but rather must
prove to a <u>reasonable probability</u> that the
item is the same as, and not substantially
different from the object as it existed at the
beginning of the chain." <u>Slaughter v. State</u>,
411 So. 2d 819, 822 (Ala. Cr. App. 1981)
(emphasis supplied).' "

<u>Williams v. State</u>, 505 So. 2d 1252, 1253 (Ala.
Cr. App. 1986), <u>aff'd</u>, 505 So. 2d 1254, 1255
(Ala. 1987). A gun is properly admitted into
evidence when it is identified at trial as
being the weapon used in the commission of the
offense. <u>Sumpter v. State</u>, 480 So. 2d 608,
613-14 (Ala. Cr. App. 1985).

Because there was no link missing from the
chain of custody of exhibit number 38 and
there was a positive identification of the
shotgun by Ransaw, a witness to the murder who
had personal knowledge of the gun that Jones
took to the scene of the crime and which he
saw Jones fire, the trial court correctly
admitted the gun into evidence.

. . .

On December 17, 1993, the petitioner filed a petition for
relief pursuant to Rule 32, A.R.Crim.P., in the Etowah County
Circuit Court alleging two general grounds for relief, each with
several subparts. First he asserted that he received ineffective

assistance of _trial_ counsel because his attorney (a) failed to request a directed verdict on the grounds that the State's evidence only consisted of uncorroborated testimony of Ishmeal R. Ransaw who was an accomplice, (b) failed to investigate and interview witnesses such as Vada Andre Samuels who would have exonerated him, (c) failed to object to the prosecutor's misconduct during the trial such as during the cross-examination of Bobby Rudolph when the prosecutor told the jury that the witness was lying, and during the cross-examination of Ishmeal Ransaw when the prosecutor vouched for Ransaw's credibility, (d) improperly stipulated to the trial court instructing the jury on first-degree assault and second degree assault as lesser included offenses to murder, (e) failed to object to the trial court amending the indictment without his consent by giving a jury instruction on complicity, and (f) failed to object to the trial court admitting into evidence exhibit number 38, the gun allegedly used by the petitioner.  Second, he claimed that he received ineffective assistance of _appellate_ counsel because his attorney failed to assert on appeal (a) that there was insufficient evidence to prove that he shot the victim, (b) that the trial court erred by admitting into evidence prejudicial photographs of the victim, and (c) that the trial court erred by denying his motion to withdraw trial counsel and his attorney's motion to withdraw from his case.  On May 23, 1994, the Etowah

5

County Circuit Court denied the petition, stating in pertinent
part:

> ... It appearing to the Court as to the First
> Ground alleging ineffective assistance of
> trial counsel that such ground provides no
> basis in law or in fact for purposes of being
> able to sustain such ground; and
>
> It further appearing to the Court that the
> Defendant had separate appeal counsel from the
> counsel who tried his cause before the Court,
> and that such appellate counsel could have
> raised such ground by means of a Motion for a
> New Trial, and, thereafter, have brought such
> issue before the Appellate Court of this
> State, but did not do so; and that the same is
> thereby precluded, based upon such, under the
> provisions of Rule 32.2(a)(3) and/or (5),
> Alabama Rules of Criminal Procedure; and
>
> It further appearing to the Court as to the
> Second Ground alleging ineffective assistance
> by Defendant appellate counsel that the al-
> leged facts in support of such ground are only
> conclusions of the Defendant as to the effect
> of certain evidence and rulings made in the
> trial of this cause, and, because of such, do
> not give rise to the standard of ineffective
> assistance counsel as set out in the case of
> Strickland v. Washington, 104 S. Ct. 2052
> (1984); and, further, because of such, such
> allegations in support of such ground fail to
> meet the specificity requirements of Rule
> 32.6(b), Alabama Rules of Criminal Procedure,
> so as to not warrant any further proceedings
> before this Court; and
>
> The Court having proceeded to review all of
> the foregoing, and upon due consideration
> thereof, IT IS HEREBY
>
> ORDERED, ADJUDGED, AND DECREED BY THE COURT
> that the Motion to Dismiss filed by the State
> of Alabama in this cause be, and the same

6

> hereby is, GRANTED for the grounds heretofore
> stated, separately and severally ....

The Alabama Court of Criminal Appeals affirmed the trial court on

October 21, 1994, stating:

> Affirmed by memorandum.   The appellant's
> petition for post-conviction relief under Rule
> 32, Ala.R.Crim.P. was correctly denied accord-
> ing to Rule 32.7(d), Ala.R.Crim.P. because it
> failed to state a claim upon which relief
> could be granted.

The petition for writ of certiorari was denied by the Alabama

Supreme Court on March 24, 1995.

On August 16, 1995, the petitioner filed the instant §

2254 petition raising the same two claims, with subparts, asserted

in the Rule 32 petition.   First, he alleged that he received

ineffective assistance of trial counsel because his attorney (a)

failed to request a directed verdict on the grounds that the

State's evidence only consisted of uncorroborated testimony of

Ishmeal R. Ransaw who was an accomplice, (b) failed to investigate

and interview witnesses such as Vada Andre Samuels who would have

exonerated him, (c) failed to object to the prosecutor's misconduct

during the trial such as during the cross-examination of Bobby

Rudolph when the prosecutor told the jury that the witness was

lying, and during the cross-examination of Ishmeal Ransaw when the

7

prosecutor vouched for Ransaw's credibility, (d) improperly stipulated to the trial court instructing the jury on first degree assault and second degree assault as lesser included offenses to murder, (e) failed to object to the trial court amending the indictment without his consent to include complicity, and (f) failed to object to the trial court admitting into evidence exhibit number 38, the gun allegedly used by the petitioner. Second, again, he alleged that he received ineffective assistance of appellate counsel because his attorney failed to assert on appeal (a) that there was insufficient evidence to prove that he shot the victim, (b) that the trial court erred by admitting into evidence prejudicial photographs of the victim, and (c) that the trial court erred by denying his motion to withdraw trial counsel and his attorney's motion to withdraw from his case.

Pursuant to the court's order to show cause, the respondents filed an answer on October 3, 1995, supported by exhibits. By order of October 6, 1995, the parties were notified that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure under Rule 8 of the Rules Governing § 2254 Cases. The petitioner filed a response on November 24, 1995.

8

## Ineffective Assistance Of Counsel

At the outset, the court concludes that it is required to review the merits of the petitioner's ineffective-assistance claims. The last state court to address these claims, the Alabama Court of Criminal Appeals, found only that petitioner's Rule 32 allegations "failed to state a claim upon which relief could be granted." Unlike such procedural bars as successiveness, untimeliness, or abandonment of claims, the determination that an allegation fails to state a claim focuses on the merits of the allegation; it either says enough about a purported violation of rights to warrant relief if true, or it does not. In either event, the judicial assessment necessarily looks to the nature of the purported violation and the facts alleged in support of it to determine whether it has "merit." Therefore, the court understands the decision of the Alabama Court of Criminal Appeals to be a decision on the merits, not a procedural bar.

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."

9

Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.
Ed. 2d 674 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's
> assistance was so defective as to require
> reversal of a conviction or death sentence has
> two components. First, the defendant must
> show that counsel's performance was deficient.
> This requires showing that counsel made errors
> so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced
> the defense. This requires showing that
> counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose
> result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, a habeas
petitioner must demonstrate that his attorney's performance fell
below "an objective standard of reasonableness," 466 U.S. at 688,
and that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." 466 U.S. at 694. Also, in making such an evaluation,
"the court should recognize that counsel is strongly presumed to
have rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional judgment."
466 U.S. at 690. The effectiveness or ineffectiveness must be
evaluated by consideration of the totality of the circumstances.

10

Stanley v. Zant, 697 F.2d 955, 962 (11th Cir. 1983).  The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation.  Stone v. Dugger, 837 F.2d 1477 (11th Cir. 1988).

### Claim One -- Ineffective Assistance Of Trial Counsel

## A.  "Accomplice" Testimony

The petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to request a directed verdict on the ground that the State's evidence linking him to the murder consisted only of uncorroborated testimony of an accomplice, Ishmeal R. Ransaw.  Although there is evidence that Ransaw was present during the "stalking" and shooting of the victim, whether he was an accomplice or just an eyewitness is far from clear.  Alabama Code § 12-21-222 prohibits a felony conviction based solely on the uncorroborated testimony of an accomplice; that question is one for the jury to consider in weighing and assessing the evidence.  See Williams v. State, 654 So.2d 74 (Ala. Cr. App. 1994).  Thus, even if defense counsel had made a motion for directed verdict, it would not have terminated the case because it was for the jury to decide whether Ransaw was an accomplice within the meaning of the limitation provided by § 12-21-222.  Trial

11

counsel's failure to move for directed verdict did not deprive petitioner of a right to have the case dismissed and, therefore, did not prejudice the defense.  This claim does not warrant habeas relief.

## B.  Investigate and Interview Witnesses

The petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to investigate and interview witnesses such as co-defendant Vada Andre Samuels who would have exonerated him.  Petitioner fails to assert any facts to support how counsel failed to investigate, that Samuels would have testified favorably for petitioner, or what Samuels would have said to exonerate him.  It is, of course, very unlikely that Samuels, himself facing murder charges in the same offense, would have taken the stand and subjected himself to cross-examination simply in order to benefit the petitioner.  Vague, general, or conclusory allegations do not constitute sufficiently compelling grounds for federal habeas relief. Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir. 1978).  Because the petitioner offered no facts to support these claims of ineffective assistance of counsel, they lack merit and are due to be denied.

C. Prosecutor's Misconduct

      The petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to object to the prosecutor's misconduct during the trial. The two alleged instances of misconduct identified by petitioner occurred during the cross-examination of defense witness Bobby Rudolph when the prosecutor improperly told the jury that the witness was lying, and during the cross-examination of Ishmeal Ransaw when the prosecutor improperly vouched for Ransaw's credibility. The following transpired during the cross-examination of Bobby Rudolph:

      . . .

Q:  Weren't you riding around with Larry Teague that night --

A:  That night?

Q:  -- and then switched cars?

A:  No. No.

Q:  Stop and think about it just a minute --

A:  No.

Q:  -- Bobby. I don't want you to tell something wrong again.

MR. HARRISON: Your Honor, I object to him saying he doesn't want him to tell something wrong again --

THE COURT: Don't make statements to the jury.

MR. HARRISON: -- that's argumentative.

13

MR. HEDGSPETH: I'm just talking to the witness, your Honor.  I'm sorry.

MR. HARRISON: We object, it's not a question.

. . .

Q:  You were riding around with Larry Teague and y'all followed them in Larry's car up to Shaw's blinking lights trying to get their attention, didn't you?

A:  No, sir.

Q:  That's not true either?

A:  No, sir.

Q:  But you've already told something wrong at least three times so we don't know whether that's true or not, what you're telling us now, do we?

MR. HARRISON: Your Honor, that's argumentative.  Again, I object.

THE COURT: Overruled.

Q:  You can answer.  Since you already admitted you've told at least three things wrong, we don't know if we can trust your answer on that, do we?

MR. HARRISON: Your Honor, what I object to is --

THE WITNESS: I don't know.

MR. HARRISON: -- to the D.A. --

THE WITNESS: I don't know.

MR. HARRISON: -- asking whether we can trust him.  That's --

MR. HEDGSPETH: Your Honor, my point is the jury has to decide.  Him asking the Defendant what we know or what we believe, I think is --

THE COURT: Yes, I think --

14

MR. HARRISON: -- improper question.

THE COURT: - it would be less argumentative to deal with facts that the jury can weigh.

MR. HEDGSPETH: Okay.

. . .

Q:   That's what you told Mr. Harrison, didn't you?

A:   I don't recall that.

Q:   You done forgot that, too.

A:   Yeah.

MR. HARRISON: Your Honor, I object to that, I don't remember that being the testimony.

MR. HEDGSPETH: Well, the jury will recall what his testimony was, your Honor.

THE COURT: Let's proceed.

. . .

Q:   That is your recollection of who said it?

A:   Yeah, that's who said it, Rudy.

Q:   Okay. But you've failed to tell the truth now, how many times?

A:   I don't recall.

Q:   So many you can't remember.

MR. HARRISON: Your Honor, I object to that. That's argumentative.

Q:   Now --

THE COURT: Overruled.

MR. HARRISON: We except.

. . .

Q:  I know, but, obviously, again, you've told some-
    thing else that's not right --

A:  I don't recall that.

Q:  -- at one time or another --

A:  I don't recall that.

Q:  -- haven't you?  And when you get caught telling
    something that's not true, then your answer is you
    don't recall, right?

A:  I don't recall that.

    MR. HARRISON: Your Honor, I object to that.
    That's argumentative.

    THE COURT: Overruled.  Let's proceed.

    . . .

Q:  And from your testimony we also know that you don't
    tell the truth very often either, do you?

A:  I don't recall that.

    MR. HARRISON: We object to that.  That's
    clearly argumentative and invades the province
    of the jury.

    THE COURT: Overruled.

Q:  You can answer.  You don't tell the truth very
    often, do you?

A:  I don't recall that.

Q:  You don't even recall telling the truth?  Let me
    ask you this, Bobby, when is the last time you can
    recall telling the truth?

    THE COURT: Well, I think we're getting far
    afield, now --

16

MR. HARRISON: Your Honor, for the --

MR. HEDGSPETH: I'll withdraw it.

MR. HARRISON: -- record I object and move it be stricken.

MR. HEDGSPETH: I've already withdrawn it. That's all, Bobby.

. . .

The record clearly shows that the petitioner's attorney objected numerous times when the prosecutor implied that Witness Bobby Rudolph was lying. Without deciding whether there was misconduct, it is clear that petitioner's trial attorney repeatedly objected and was largely overruled. Counsel was not constitutionally ineffective in this instance. Therefore, this claim lacks merit and is due to be denied.

The petitioner further alleges that his attorney was ineffective for failing to object during the examination of Ransaw when the prosecutor improperly vouched for Ransaw's credibility. After reviewing the testimony of Ransaw, it is clear that the prosecutor properly questioned the witness and did not make any improper comments about Ransaw's credibility. Thus, this claim lacks merit and is due to be denied.

17

D.  Jury Instructions

The petitioner claims that he received ineffective assistance of trial counsel because his attorney improperly requested and stipulated to the trial court instructing the jury on first degree assault and second degree assault as lesser included offenses to murder, rather than manslaughter and criminally negligent homicide.  Petitioner argues that these instructions were prejudicial to him because they prevented the jury from considering manslaughter and criminally negligent homicide, and that the jury could not have found him guilty of assault because there was a death.

The trial court judge instructed the jury as follows on the issue of assault:

> ... Now, ladies and gentlemen, there are two
> lesser included offenses within the charges of
> the Indictment.  The first is Assault in the
> First Degree.  In that respect I would charge
> you, as follows: a person commits the crime of
> Assault in the First Degree if he causes
> serious physical injury to another person and
> he does so with intent to do so and by means
> of a deadly weapon or a dangerous instrument.
> I would charge you, ladies and gentlemen of
> the jury, that to sustain the charge of As-
> sault in the First Degree in this case the
> State, by the evidence, must prove beyond a
> reasonable doubt each of the following ele-
> ments of that offense: first, that Glenn Louis
> Williams suffered a serious physical injury;
> second, that the serious physical injury
> sustained by him was caused by this Defendant;
> and, third, that in causing such injury the

18

Defendant acted with intent to cause serious
physical injury to any person by means of a
deadly weapon or a dangerous instrument.

There is, also, included as a lesser offense
Assault in the Second Degree. In that respect
I would charge you, as follows: a person
commits the crime of Assault in the Second
Degree if he causes serious physical injury to
another person acting recklessly with a deadly
weapon or a dangerous instrument but without
specific intent to cause serious injury or
causes physical injury to another person which
is not serious while acting with a deadly
weapon or a dangerous instrument and with
intent to cause such physical injury which is
not serious.

I would charge you, ladies and gentlemen of
the jury, that to sustain the charge of As-
sault in the Second Degree in this case the
State, by the evidence, must prove beyond a
reasonable doubt each of the following ele-
ments of that offense: first, that Glenn Louis
Williams suffered serious physical injury and
that the injury, that serious physical injury,
was caused by this Defendant and that in so
doing the Defendant acted recklessly with a
deadly weapon or a dangerous instrument but
without specific intent to cause serious
physical injury or that Glenn Louis Williams
suffered physical injury which was not serious
and that this Defendant caused the physical
injury and that in so doing he acted with a
deadly weapon or a dangerous instrument.

. . .

There was evidence that both petitioner and co-defendant Samuels

fired shots at the victim and that petitioner's shot struck the

victim in the leg, causing serious but not necessarily fatal

injury. The jury could have found that the petitioner only

19

intended to assault the victim, not aid and abet Samuels in killing him. There was evidence, if believed by the jury, that could have supported a conviction for assault rather than murder.

Trial counsel's decisions were based on his professional judgment of how best to present petitioner's defense. If counsel decides to present or not to present certain evidence because of a strategic or tactical decision, the court must afford a strong presumption of correction to the decision which is "virtually unchallengeable." Smith v. Dugger, 840 F.2d 787, 795 (11th Cir. 1988); Elledge v. Dugger, 823 F.2d 1439, 1444 (11th Cir. 1987). The decision to stipulate to the trial judge instructing the jury on assault was a tactical decision not constituting ineffective assistance of counsel. Such strategic or tactical decisions do not constitute unprofessional conduct. Therefore, this claim is due to be denied.

E.  Indictment

The petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to object to the trial court amending the indictment without his consent by instructing the jury on the concept of complicity. There is no requirement that the petitioner be expressly charged with complicity in an indictment in order to be found guilty of the offense charged due to complicity, nor is there a requirement to amend the

20

indictment in order to instruct the jury on complicity. See Johnson v. State, 405 So. 2d 149, 153 (Ala. Cr. App. 1981); Phelps v. State, 439 So. 2d 727, 734 (Ala. Cr. App. 1983); Hill v. Perini, 788 F.2d 406, 407 (6th Cir.), cert. denied, 479 U.S. 934 (1986); Reece v. Brigano, 953 F.2d 644 (6th Cir. 1992).  The court did not amend the indictment, but merely instructed the jury on all the legal concepts brought into play by the evidence on the charges. Therefore, the petitioner's trial counsel was not ineffective for failing to object to the trial court amending the indictment or instructing the jury on complicity.  Thus, this claim is due to be denied.

## F.  Evidentiary Error

The petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to object to the trial court admitting into evidence exhibit number 38, the gun allegedly used by the petitioner, where the chain of custody was improper.  To the contrary, the petitioner's counsel did object to the admission of exhibit number 38:

> . . .
>
> MR. HEDGSPETH: At this time, then, your Honor, we will offer into evidence State's Exhibit Number 38.

21

MR. HARRISON: Your Honor, I would object to
the introduction of 38 and would like to
approach the bench.

(Whereupon, the following proceedings were had
at the bench before the Court, to-wit:)

MR. HARRISON: Your Honor, I think at this time
there is clearly a fatal flaw in the chain of
custody on 38 in that we don't know where it
came from.   The first testimony we had, of
course, Rudy Ransaw testified that in his
opinion it was the same gun the Defendant had
but between that time and when Sergeant Wright
got it we don't know where it was or where it
came from.    Sergeant Wright testified he
received it from Officer Gary, I believe, on
February the 26th of 1990.   We don't know
where Officer Gary got or had it or where it
was found or recovered from.

MR. HEDGSPETH: Lieutenant Wright's testimony
was that it was turned over to Lieutenant Gary
by someone who found it behind the Carver
Center.   It was brought direct to him.   It
would go to the weight but not the admissibil-
ity of it, your Honor.

MR. HARRISON: Gary hasn't testified where Gary
found it.   Sergeant Wright just testified that
was his understanding, he got it from Gary.

THE COURT: I think we need Gary's testimony as
to that.  He did state that's what he was --

MR. HEDGSPETH: Yes, it was turned over to him
by her.

. . .

22

Because the record clearly shows that the petitioner's counsel did object to the admission of exhibit number 38, this claim lacks merit and is due to be denied.

## Claim Two -- Ineffective Assistance Of Appellate Counsel

### A.  Insufficient Evidence

The petitioner contends that he received ineffective assistance of appellate counsel because his attorney failed to assert on appeal that there was insufficient evidence to prove that he shot the victim.  Ishmeal Ransaw, an eyewitness to the murder, testified to the following:

> . . .
>
> Q:  Okay.  Now, you told us that Vada told Kevin to stop the car and that he did.  Did anyone, then, get out of the car?
>
> A:  Yes, sir.
>
> Q:  Who was the first person to get out of that car, Rudy?
>
> A:  Rollo (petitioner).
>
> Q:  By Rollo, again, you're talking about Darin Jones?
>
> A:  Yes, sir.
>
> Q:  And when he opened the door and got out what, if anything, did you see or notice him to do?
>
> A:  Grabbed his gun, stuck it over the top of the car.
>
> Q:  And what did he do then?

23

A:    Fired shots.

Q:    How many?

A:    Two, that I know of.

. . .

Q:    Okay.  So, Rollo jumped back in the car.  Did he
      still have his gun with him at that time?

A:    Yes, sir.

. . .

Q:    ... were there any discussions among anybody else
      there in the car about any potential alibis?

A:    Yes, sir.

Q:    Who was doing the talking about providing the
      alibis and what they were going to be?

A:    Vada Samuels, Darin Jones.

Q:    Okay.  So, Vada and Darin, or Rollo, are the ones,
      now, cooking up the stories?

A:    Yes, sir.

. . .

Q:    And who was the first one that started talking or
      bragging about what had happened?

A:    Rollo (petitioner).

Q:    Rollo.  And tell us, if you would, what Rollo said
      he did and what his part was out there with regard
      to Glenn Williams out there on Tuscaloosa Avenue.

A:    Rollo said he shot first and said, "I got him.  I
      got him."

Q:    He shot first, "I got him. I got him?"

24

A:   Yes, sir.

...

Dr. Joseph Embry, the forensic pathologist who examined the victim, testified:

...

Q:   Doctor, after having, then, concluded your autopsy, both your internal and your external examination, based on your training, your experience and your expertise in your particular field, were you able to form a judgment or opinion in your professional capacity as to what, if anything, was the cause of death of Glenn Louis Williams?

A:   Yes, sir.

Q:   And what, if anything, is that professional opinion?

A:   In my opinion he died from the shotgun wound in his chest and in his right thigh.

...

Upon an independent review of the record, the Court concludes that any rational trier of fact could have found the petitioner guilty of murder beyond a reasonable doubt in light of the evidence presented.  Plainly there was more than adequate evidence that the petitioner shot the victim.  Accordingly, because there was sufficient evidence to convict the petitioner, his attorney was not ineffective for failing to raise an insufficiency of the evidence

claim on appeal.  Thus, the petitioner is not entitled to relief on this claim.

## B.  Prejudicial Photographs

The petitioner contends that he received ineffective assistance of appellate counsel because his attorney failed to assert on appeal that the trial court erred by admitting into evidence prejudicial photographs of the victim.  In Alabama, the admissibility of photographs lies within the trial court's discretion and will be reviewed only to determine whether there has been an abuse of that discretion.  Jackson v. State, 553 So.2d 647 (Ala. Crim. App. 1989); Barnes v. State, 445 So. 2d 995 (Ala. Crim. App. 1984).  These were autopsy photographs plainly relevant to prove the identity of the deceased and the extent of wounds inflicted as the cause of death.  Whether counsel decided not to raise this issue on appeal or merely overlooked it, petitioner suffered no prejudice because the issue does not have sufficient merit to fault counsel for not having asserted it.  This claim is due to be denied.

## C.  Motion to Withdraw

The petitioner contends that he received ineffective assistance of appellate counsel because his attorney failed to assert on appeal that the trial court erred by denying his "motion

26

to withdraw" appointed trial counsel and his appointed attorney's motion to withdraw from his case.  The Sixth Amendment duty to appoint an attorney is fulfilled if the defendant is appointed a competent attorney who does not have any conflict that would prevent him from presenting an effective defense. <u>United States v. Ely</u>, 719 F.2d 902 (7th Cir. 1983).  "No absolute right to an appointed attorney of choice exists, so an indigent defendant cannot complain because he was not allowed to shop for a particular appointed lawyer." <u>Hinton v. Berge</u>, 62 F.3d 1419 (7th Cir. 1995); <u>United States v. Davis</u>, 604 F.2d 474 (7th Cir. 1979).  The defendant must show that a competency or conflict problem existed, leaving him actually or effectively without counsel. <u>See</u> <u>id</u>.

"To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." <u>Danner v. United States</u>, 820 F.2d 1166, 1169 (11th Cir. 1987).  The petitioner "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action." <u>United States v. Mers</u>, 701 F.2d 1321, 1328 (11th Cir. 1983).  Petitioner has failed to assert any instances which suggest any conflict of interest between him and his trial attorney.  Although counsel filed a motion to withdraw based on

27

comments critical of him made by petitioner and petitioner's family, nothing in the record suggests that he failed to zealously represent petitioner at trial.   Therefore, the petitioner's appellate counsel had no basis for arguing that the motion to withdraw was erroneously denied.  Again, because the issue lacked sufficient merit to fault counsel for not having raised it on appeal, he was not ineffective.

<u>Conclusion</u>

Accordingly, for the reasons stated above, the court determines that the petition for writ of habeas corpus is meritless and due to be DENIED.  By separate order the court will deny and dismiss the petition with prejudice.

DATED this __21st__ day of March, 1997.


_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE